In re Charles GEORGE, Debtor.

Mike HARRIS, Despina
Harris, Plaintiffs,

v.

Charles GEORGE, Defendant.

Bankruptcy No. 95–23779.
Adversary No. 96–2020.

United States Bankruptcy Court,
D. Connecticut.

March 5, 1997.

Leon M. Rosenblatt, Rosenblatt, Rintoul &
Rintoul, L.L.C., West Hartford, CT for Plain-
tiffs.

Neal Ossen, Hartford, CT for Debtor–Defendant.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Mike Harris and Despina Harris, the plaintiffs, have filed an amended complaint seeking to except from discharge a state-court judgment debt in the amount of $160,-796.59 they obtained against Charles George, the debtor-defendant. The plaintiffs' motion for summary judgment contends, under collateral estoppel principles, that the state-court judgment, issued after a bench trial, precludes the debtor from relitigating the material facts found by the state court and that the plaintiffs are entitled to a judgment as a matter of law that the debtor's obligation is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (a discharge does not discharge debt for money "obtained by false pretenses, a false representation, or actual fraud....").[1] *See* Fed.R.Bankr.P. 7056, incorporating Rule 56 Fed.R.Civ.P. (summary judgment shall be rendered if there is no genuine issue as to any material fact and moving party entitled to a judgment as a matter of law).

The debtor opposes the motion arguing that collateral estoppel should not apply because of an allegedly conflicting jury verdict on like issues to those decided by the state-court judge. He also contends, in the alternative, that portions of the judgment debt are dischargeable because they represent punitive damages.

### II.

The Connecticut Superior Court (Hennessey, J.), on May 18, 1995, issued a "Memorandum of Decision On Count Three" (the "Memorandum") in a contested action brought before it by the plaintiffs against the debtor. The first two counts of the complaint were tried to a jury. The court concluded that the debtor's actions "were unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act § 42–110a et seq." *Memorandum* at 7. The court utilized the following test for "deceptive" acts:

1. That the defendant made a representation, omission or other act likely to mislead the plaintiff;

2. That the plaintiff interpreted the defendant's act, omission or statement reasonably under the circumstances; and

3. That the act, omission or statement was material, i.e., it was likely to affect the plaintiff's decisions or conduct.

*Memorandum* at 2.

The court found that the debtor, holding himself out as an investment advisor working with a company named NAPC, solicited the plaintiffs as clients. For a fee of $725, the debtor submitted a financial plan to the plaintiffs. The plan provided for the plaintiffs to invest in coins, a condominium and a mutual fund. The plaintiffs implemented the plan to their eventual monetary loss. Neither the debtor nor NAPC was licensed or registered in Connecticut to give investment advice.[2] The court, on the record made, concluded "that the [debtor] falsely held out that he and NAPC provided objective investment advice tailored to the plaintiffs' individual needs and investment goals; that the [debtor] failed to disclose that he received commissions on the investments he advised the plaintiffs to make; that the [debtor] held himself out as an investment advisor competent and qualified to give investment advice when he was not." *Memorandum* at 7.

The court awarded the plaintiffs a judgment "in the amount of $55,000 compensatory damages together with attorney fees to be determined at an evidentiary hearing to take place before this court." *Id.* The evidentiary hearing took place on July 11, 1995, after which, on July 20, 1995, the court entered a

---

1. The plaintiffs' amended complaint also asserts causes of action under Bankruptcy Code § 523(a)(4) and (6).

2. Conn.Gen.Stat. §§ 36b–2, *et seq.*, provide that no person shall transact business as an investment advisor in Connecticut unless registered as such by the commissioner of insurance.

final judgment of $160,796.59 for the plaintiffs, comprising $55,000 compensatory damages, "prejudgment interest of $53,560.23 and attorney's fees of $52,236.36." *Exh. B.*

The debtor filed his Chapter 7 case on November 7, 1995 without satisfying any portion of the judgment debt. The plaintiffs timely filed their original complaint objecting to the discharge of the judgment debt.

### III.

■ *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) affirmed that collateral estoppel (issue preclusion), unlike res judicata (claim preclusion), applies in discharge-exception proceedings pursuant to § 523(a). State-law doctrine, rather than a federal theory, controls the application of collateral estoppel in the bankruptcy court. *See Spartz v. Cornell (In re Cornell)*, 178 B.R. 45, 47 (Bankr. D.Conn.1995). The Connecticut Supreme Court has summarized Connecticut's view of collateral-estoppel standards as follows:

> Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment. An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta.

*Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374, 378–79 (1993) (citations and internal quotation marks omitted).

### IV.

■ A debt may be determined nondischargeable under § 523(a)(2)(A) "where the creditor proves that (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Harper v. Richey (In re Richey)*, 103 B.R. 25, 29 (Bankr.D.Conn.1989). The level of reliance is justifiable reliance. *See Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). "It is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A)." *Fonfara v. Dowd (In re Dowd)*, 116 B.R. 26, 27–28 (Bankr.D.Conn. 1990) (internal quotation marks and citations omitted). A plaintiff may establish the elements under § 523(a)(2)(A) by a preponderance of the evidence and need not submit clear and convincing evidence. *Grogan*, 498 U.S. at 289–91, 111 S.Ct. at 661.

■ This court concludes that the state-court's findings and conclusions sufficiently satisfy all the elements of § 523(a)(2)(A) and thereby collaterally estop relitigation in the bankruptcy court of the issues decided by the state court. The same parties appeared before Judge Hennessey where the issues were fully and fairly litigated on whether the debtor's actions amounted to false representations on which the plaintiffs reasonably relied, and the losses thereby sustained. Although, obviously, the particular facts of each matter will control, several courts have held that state-court findings in actions involving unfair trade practices claims may meet collateral estoppel standards for § 523(a)(2)(A) purposes. *See Kuzniar v. Keach (In re Keach)*, 204 B.R. 851 (Bankr.D.R.I.1996) (state-court action, where jury found debtor engaged in unfair and deceptive trade practices, constitutes a proper basis under collateral estoppel elements to grant judgment as a matter of law pursuant to § 523(a)(2)(A)); *Bebber v. J.M. Westall & Co., Inc. (In re Bebber)*, 192 B.R. 120, 122–23 (W.D.N.C.

1995) (bankruptcy court can rely on state-court findings regarding creditor's unfair trade practices claim against debtor to determine whether creditor's claim came within discharge exception for fraud); *BT Commercial Corporation v. Kochekian (In re Kochekian)*, 175 B.R. 883, 889 (Bankr.M.D.N.C.1995) (civil judgment against debtor in action alleging fraud, deceit and unfair and deceptive trade practices met requirements for collateral estoppel for § 523(a)(2)(A) purposes).

The debtor argues against the use of collateral estoppel because a jury, claimed for another count of the complaint in the state-court action, allegedly failed to find the debtor responsible for fraud. This argument is unpersuasive in light of the detailed findings made and conclusions reached by Judge Hennessey in the Memorandum.

■ The debtor contends that the award of prejudgment interest and attorney's fees made by the state court amount to punitive damages awards and should be found dischargeable under § 523(a)(2)(A). The debtor cites 4 *Collier on Bankruptcy*, ¶ 523.08[4] at 523–53 (15th ed. rev'd 1996), which, despite conflicting authority, states: "the plain language of section 523(a)(2), as well as the narrow construction normally given to discharge exceptions, dictate that it should not apply to punitive damages."

The plaintiffs reasonably question whether the granting of prejudgment interest and attorney's fees qualifies as traditional punitive damages since they serve no purpose other than to make the plaintiffs whole. Assuming, without deciding, that such awards do constitute punitive damages, Chief Judge Shiff, in this district, after reviewing the various holdings on the dischargeability of punitive damages, has concluded the better rule is that noncompensatory damages are nondischargeable under § 523(a)(2)(A). The conclusion is based upon both statutory language and policy grounds. *See Federal Deposit Insurance Corporation v. Roberti (In re Roberti)*, 201 B.R. 614, 623 (Bankr.D.Conn.1996) ("To discharge an ancillary debt which would not exist but for a non-dischargeable debt seems erroneous. [B]oth punitive and compensatory damages flow from same course of conduct." (internal quotation marks and citations omitted)). *See also Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52 (3d Cir.1997) (holding that § 523(a)(2)(A) excepts from discharge punitive as well as compensatory damages, citing *Roberti* with approval, and joining in the like conclusion of the Eleventh Circuit in *St. Laurent, II v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 677–81 (11th Cir.1993)). This court concurs with *Roberti*, and, accordingly, concludes that the entire judgment of $160,-796.59 is nondischargeable.

## V.

## CONCLUSION

The plaintiffs' motion for summary judgment is granted, and a judgment will enter determining that the state-court judgment debt due the plaintiffs from the debtor is nondischargeable. It is

SO ORDERED.